UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHAMPION EXPOSITION SERVICES LLC,<br>    Plaintiff,<br><br>v.<br><br>NEXXT SHOW, LLC<br>    Defendant. | Civil Action No. _____ |

## COMPLAINT

Plaintiff, Champion Exposition Services LLC ("Champion" or "Plaintiff"), brings the following civil action to seek redress against Defendant, Nexxt Show, LLC ("Nexxt" or "Defendant"), for injunctive and monetary relief, because of Nexxt's violations of the Computer Fraud and Abuse Act, 18 U.S.C. 1030 et. seq. ("CFAA"), G.L. c. 93A, and common law trespass.

This Action is filed as a result of Nexxt's unlawful, unauthorized access of Champion's computer system. Nexxt is a direct competitor of Champion, founded by the former CEO of Champion who recently separated from Champion and founded Nexxt. Nexxt also recently hired a Champion former IT professional, who has detailed knowledge of Champion's computer systems, including password information. Champion seeks an *ex parte* order to ensure the preservation of electronic evidence residing on Nexxt's computer system, as well as injunctive relief and damages.

## PARTIES

1.  Champion Exposition Services LLC is a Delaware corporation with its principle place of business at 139 Campanelli Drive, Middleboro, Massachusetts.

2.      Defendant, Nexxt Show, LLC is a corporation with corporate headquarters located at 61 Strafello Road, Avon, Massachusetts.

## JURISDICTION AND VENUE

3.      Jurisdiction is invoked pursuant to 28 U.S.C. §1331 because a claim arises under the CFAA, 18 U.S.C. §1030 et seq. Supplemental jurisdiction is invoked pursuant to 28 U.S.C. §1367.

4.      Venue is proper in this Court pursuant to 29 U.S.C. §1391(b) because the acts complained of occurred in this judicial district and division. Nexxt's and Champion's principle places of business are located in Norfolk and Plymouth Counties, respectively, and the Champion computers from which Nexxt gained unauthorized access are located in Massachusetts.

## BACKGROUND

### Champion and Nexxt

5.      Champion provides general contractor services with respect to trade shows and corporate events. Its primary customers are the associations, trade show operators and corporate event marketers that stage the events as well as the exhibitors at the events.

6.      Nexxt is a direct competitor of Champion. Nexxt's website describes the company as "founded by an experienced team of trade show professionals ... built from the ground up to challenge the industry status quo and change the way trade shows are produced and managed forever." In fact, Nexxt was founded by and consists almost exclusively of former Champion employees.

7.      Champion was founded by Mark Epstein, who served as its Chief Executive Officer until September 2008. Thereafter, he remained as a Consultant and member of

Champion's parent company's Board of Managers until July 26, 2010, when he resigned from his Board position. Epstein was party to a non-competition and non-solicitation agreement with Champion that expired on September 15, 2010.

8. According to Nexxt's website, the company was founded by Epstein. According to documents filed with the Massachusetts Secretary of State, on September 22, 2010, Nexxt filed an application for registration to do business as a foreign limited liability company in the Commonwealth. These documents identify Epstein's son, Matthew Epstein, as the President of Nexxt. He was formerly employed as a senior executive at Champion until February 2009.

9. A number of Champion employees are employed by Nexxt, including Scott Ceurvels, who was Champion's Vice President of Product Development, David Connor, formerly Vice President, Champion Exhibits, John Szymczak, formerly Vice President of National Accounts at Champion, Anita Bota, formerly Senior Account Executive at Champion, Anne Marie Rollock, formerly Senior Project Manager/Champion Exhibits, Kristin Macedo, Formerly an Account Executive at Champion, and Vicky Bassett, formerly a Champion Account Executive. Nexxt also employs Sherry Ryder, formerly Champion's top IT executive. Ms. Ryder is intimately familiar with Champion's computer system, including but not limited to its security protections and password requirements.

10. When they worked at Champion, all of these Nexxt employees had direct contact with Champion's clients and prospective clients and/or were privy to Champion's confidential information regarding, among other items: clients, prospects, pricing, marketing strategies, business processes and profit margin.

### Champion's Confidential Electronic Information

11. The trade show/corporate events production industry is highly competitive. The shows are typically awarded through a bid process. Show producers like Champion typically receive a fee from the trade association sponsoring the show. The producer then charges for exhibitor spaces and services provided to the exhibitors. Having historical knowledge as to pricing and profit margins for a particular show provides significant advantage in terms of preparing a successful bid and producing a show.

12. Champion maintains a computer system that contains Champion confidential and proprietary information, including but not limited to information pertaining to clients, prospects, pricing, marketing strategies, business processes and profit margin.

13. Champion's network is password-protected. Every Champion employee whose job requires access to the network must utilize a unique user name and password to gain access to the network. The same user name and password are used to gain access remotely, through Citrix. Such passwords must be changed at least every ninety days, and the system prompts employees to do so at the appropriate time. In addition, the system requires that the employee use 3 different passwords before being permitted to use the same password again.

14. Champion utilizes a Citrix software program that allows employees to access its computer system from remote locations. Access to Champion's computer system through Citrix is, like its network, password-protected.

15. Once an employee gains access to Champion's network, directly or through Citrix, they are only given access to those programs and applications germane to their position and responsibilities. Assuming an employee's position warrants access to such a program or

4

application, the employee must then provide another unique user name and password in order to access such program or application.

16. In addition to passwords and limited user access, Champion also protects its confidential information by requiring employees to sign non-disclosure agreements and/or non-solicitation agreements.

17. Champion uses several computer programs that contain confidential business information relating to trade shows and events. One program is Champion's proprietary and highly confidential Champion Corporate Accounting ("CCA") application, which holds Champion's most sensitive financial and other business information.

18. CCA is the primary tool used by Champion to gauge performance and accountability. Specifically, CCA contains all of Champion's financial records, including its margins, for its past, present and future trade shows, since 2006. This program is not made available to anyone outside of Champion, and within Champion its access is limited.

19. The data held by the CCA program is constantly updated. This includes detailed records of expenses as well as revenue. The program keeps track of gross margins, margins and all financial information. It is used by Champion's operations and finance groups, as well as its executive team. When accessing CCA by Citrix, reports and other data can be printed or saved from CCA onto a hard drive or other media.

20. If a competitor, like Nexxt, has access to CCA, it would provide them with a tremendous unfair advantage, especially for trade shows which are up for bid. If a competitor knows Champion's margin, they would know how to adjust their bid pricing on the show management proposal in order to be more competitive.

**Nexxt's Pattern Of Unauthorized Access of Champion's Electronic Information**

21.     On Thursday, December 16, 2010, Champion's IT Director, Patrick Ryan, was monitoring the Citrix servers at Champion's Middleboro, Massachusetts offices when he noticed something peculiar about one of the Citrix log-ins. Specifically, he noticed that someone was logging into Champion's network through Citrix with a computer called "NEXXT". At the time, he was aware that Nexxt was a competitor of Champion recently formed by Epstein.

22.     He also noticed that the "NEXXT" computer accessing Champion's network through Citrix was being accessed through the user name "Johnnym," which he knew to be the account of Champion employee John McClellan.

23.     While he was monitoring the "NEXXT" computer accessing the Champion network through Mr. McClellan's user name, Mr. Ryan witnessed it accessing Champion's proprietary and highly confidential CCA application, which holds Champion's most sensitive financial and other business information.

24.     At the time he was witnessing the NEXXT computer access the Champion network, Mr. Ryan did not know exactly when such access began. However, he watched such access continue for approximately five minutes before the user terminated the session.

25.     As a result of what he had witnessed, Mr. Ryan notified Champion management, and shut off access to Mr. McClellan's Citrix account.

26.     In addition, Mr. Ryan reviewed the Windows Event Logs in order to determine the extent of such wrongful access. During his investigation, he noticed that every time a computer from Nexxt would gain access to the Champion network through Citrix, Champion's network would note an "error" as a result of the Nexxt computer's attempt to set up a Nexxt printer as the default printer.

27. After interviewing Mr. McClellan, Champion confirmed that he was not the person accessing Citrix using a Nexxt computer, and he had never provided his Champion password to anyone at Nexxt. Therefore, Champion was able to confirm that someone at Nexxt was using Mr. McClellan's password to access Citrix.

28. Mr. Ryan's further investigation revealed that, in addition to utilizing Mr. McClellan's Citrix account to access the Champion network, a computer named MATTE-VAIO was used to access Champion's computers from Nexxt. Nexxt's President is Matt Epstein. Further, someone was using a Nexxt computer to access the Champion network through another user name ("Desk2" -- Champion's service desk account) as well.

29. Mr. Ryan's investigation revealed 30 different accesses to Champion's network from a Nexxt computer between September 27 and December 16, 2010.

## COUNT I

### Computer Fraud and Abuse Act

30. Champion realleges and incorporates by reference the allegations contained in paragraphs 1 though 29 above.

31. Champion's computer system is a "protected computer" within the meaning of the Computer Fraud and Abuse Act. Champion's computer system is used in or affects interstate and foreign commerce, and to access the internet.

32. Nexxt intentionally accessed Champion's computer system without authorization. It used a password of a current Champion employee without that employee's or Champion's authority, to access Champion's computer systems.

33. Nexxt's intentional and unlawful conduct caused damages and losses in excess of $5,000.00. Specifically, Champion's damages include, but are not limited to, costs

associated with the forensic expert analysis relating to the unauthorized access of Champion's computers, the loss of many hours from day-to-day responsibilities of Champion employees (including but not limited to its IT Manager, Patrick Ryan), all well in excess of $5,000.00.

## COUNT II

### (Violation of M.G.L. C. 93A, §11)

34.     Champion realleges and incorporates by reference the allegations contained paragraphs 1 through 33 above.

35.     At all relevant times, Champion and Nexxt were engaged in trade or commerce within the Commonwealth of Massachusetts and the acts at issue occurred within the Commonwealth.

36.     The conduct of Nexxt as described above constitutes unfair and deceptive acts under M.G.L. c. 93A, § 11.

37.     Nexxt's violations of M.G.L. c. 93A were premeditated and willful. As a direct and proximate result of the unfair and deceptive trade practices of Nexxt, Champion has suffered or will suffer a loss of money or property.

WHEREFORE, Champion prays the Court for the following relief.

(1)     An award of monetary damages against Nexxt in an amount to be determined at trial for any and all damages caused by Nexxt's wrongful conduct, plus an award of exemplary and punitive damages and other equitable and legal relief, an amount equal to three (3) times the amount of actual damages, and the attorney's fees incurred by Champion in this action.

(2)     Such other and further relief as the Court deems just and proper.

## COUNT III

### (Trespass)

38. Champion realleges and incorporates by reference the allegations contained in paragraphs 1 through 37 above.

39. The actions of Nexxt described above in accessing Champion's computers without authorization constitutes an unauthorized and unlawful trespass, and Champion has been damaged thereby in an amount which cannot be determined with certainty at this time.

40. The conduct of Nexxt as described above was intentional, willful, and justifies an award of punitive damage.

WHEREFORE, Champion prays the Court for the following relief:

(1) An award of monetary damages against Nexxt in an amount equal to any and all damages caused by Nexxt's wrongful conduct, plus an award of exemplary and punitive damages and other equitable and legal relief.

(2) Such other and further relief as the Court deems just and proper.

## COUNT IV

### (Injunctive Relief)

41. Champion realleges and incorporates by reference the allegations contained in paragraphs 1 through 40 above.

42. Unless Nexxt is enjoined from continuing to access and/or possess Champion's confidential and/or proprietary information, Champion will be irreparably harmed by the use and/or disclosure, whether directly or indirectly, of Champion's confidential and/or

proprietary information; and/or economic loss which is unascertainable at this time and may never be ascertainable, as well as future economic loss which is also presently incalculable.

WHEREFORE, Champion respectfully requests that the Court issue an Order as follows:

(1) To permit a computer forensic specialist designated by Champion, a Champion representative, and counsel for Champion, under the supervision of a United States Marshall or his or her designee, to immediately enter the premises of Nexxt, obtain access to the computer systems of Nexxt, and make forensic image copies of any devices containing electronically stored information ("ESI"), including but not limited to, all computer hard drives, network drives, devices and/or back up media and deliver same to the United States Marshall to be held subject to further Order of the Court, for the purposes of determining what, if any, Champion information has accessed, copied, altered, deleted, or misappropriated, and to require Nexxt to provide all cooperation and assistance to enable same;

(2) To enjoin Nexxt from directly or indirectly, possessing, accessing, using or disclosing at any time in the future confidential information residing on Champion's computer systems;

(3) To enjoin Nexxt from accessing, using, deleting, altering, destroying, copying, transferring, or disclosing any information or documents from its or its employees computers, devises or computer systems, or destroying any documents until further order of the Court;

(4) To require Nexxt to return (and neither retain nor destroy) all of Champion's property, including without limitation, all electronic information, databases, and any Champion documents;

(5) To restrain and/or enjoin Nexxt, whenever applicable, from failing to comply with the above orders;

(6)     To require Nexxt to cooperate to the fullest extent to return all Champion information and property to Champion, and to assist as necessary in the purging of Champion information from any and all of its computers and devices by Champion's forensic specialists;

(7)     To restrain and enjoin Nexxt from doing any and all other acts as this Court deems necessary and appropriate; and

(8)     To award all damages to which Champion is entitled under law and equity.

> Respectfully Submitted,
>
> CHAMPION EXPOSITION SERVICES LLC,
> By its attorneys,
>
> _____
> Stephen T. Paterniti, BBO #564860
> paternis@jacksonlewis.com
> Erik J. Winton BBO #600743
> wintone@jacksonlewis.com
> Jackson Lewis LLP
> 75 Park Plaza
> Boston, MA 02116
> (617) 367-0025

Dated:

4850-8143-8984, v. 1