```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS


  _____

  CHAMPION EXPOSITION SERVICES, LLC;
  WCP EXPOSITION SERVICES OPERATING
  COMPANY; and WCP EXPOSITION SERVICES
  HOLDING COMPANY, LLC,
                   Plaintiffs,           Civil Action
                                         No. 10-12228-WGY
  v.
                                         March 9, 2011
  NEXXT SHOW, LLC; MARK EPSTEIN;         3:12 p.m.
  MATTHEW EPSTEIN; JOHN SZYMCZAK;
  SUSAN DOS REIS; SHERI RYDER;
  ANITA BOTA; MICHAEL HALL;
  VICKY BASSETT; and NICOLE PREFONTAINE,
                   Defendants.
  _____




                  TRANSCRIPT OF MOTION HEARING

             BEFORE THE HONORABLE WILLIAM G. YOUNG

                  UNITED STATES DISTRICT COURT

                JOHN J. MOAKLEY U.S. COURTHOUSE

                        1 COURTHOUSE WAY

                        BOSTON, MA  02210




                    DEBRA M. JOYCE, RMR, CRR
                     Official Court Reporter
                 John J. Moakley U.S. Courthouse
                   1 Courthouse Way, Room 5204
                        Boston, MA  02210
                          617-737-4410
```

```
 1   APPEARANCES:

 2   FOR THE PLAINTIFFS:

 3   ERIK J. WINTON, ESQ.
     BRIAN M. CHILDS, ESQ.
 4   Jackson Lewis LLP
     75 Park Plaza
 5   Boston, MA 02116
     617-367-0025
 6
     FOR THE DEFENDANTS:
 7
     MICHAEL J. CONNOLLY, ESQ.
 8   KELLEY A. JORDAN-PRICE, ESQ.
     Hinckley, Allen and Snyder, LLP
 9   29th Floor
     28 State Street
10   Boston, MA 02109
     617-345-9000
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S
 2              (The following proceedings were held in open
 3   court before the Honorable William G. Young, United States
 4   District Judge, United States District Court, District of
 5   Massachusetts, at the John J. Moakley United States Courthouse,
 6   1 Courthouse Way, Boston, Massachusetts, on March 9, 2011.)
 7              THE COURT:  Now I'll ask the clerk to call the case
 8   again.
 9              THE CLERK:  Calling civil action 10-12228, Champion
10   Exposition Services v. Nexxt Show.
11              MR. WINTON:  Erik Winton from Jackson Lewis for
12   plaintiffs, your Honor.  With me is Brian Childs of my office.
13              MR. CONNOLLY:  Michael Connolly and Kelley
14   Jordan-Price on behalf of the defendants, all the defendants
15   with the exception of Mr. Michael Hall.
16              THE COURT:  All right.
17              MR. LITTERIO:  Good afternoon, your Honor.
18   Christopher Litterio representing defendant Michael Hall.
19              THE COURT:  Thank you.
20              All right.  This is the plaintiffs' motion, and I'll
21   hear the plaintiff.
22              MR. WINTON:  Thank you, your Honor.  This is our
23   motion for contempt, and we bring this motion after careful
24   consideration, your Honor.
25              Court orders should be taken very seriously, and we
```

1  believe there is clear and convincing evidence that there's
2  been a violation of a court order on several occurrences, a
3  clear and unambiguous order that we have reviewed the
4  opposition of brother counsel, I believe it's in the
5  declarations, they're full of excuses and rationalizations but
6  no denials, your Honor.  In fact, just like the allegations set
7  forth in our TRO paper before Judge Stearns, there are no
8  denials of the actions here forming the basis for contempt.
9  Instead, they try to argue why the contempt should not enter,
10 and we believe those arguments are without merit and that they
11 have not engaged in diligent or good faith effort to abide by
12 these orders.  They have not been careful enough -- they have
13 not read the orders as written, and they have not taken these
14 obligations seriously.
15         Your Honor, going just four subjects under each one,
16 I'm going to start with the first.  We believe there was a
17 violation of the court order and contempt.
18         The first is related to defendant John Szymczak's
19 e-mail, and that is a violation of Judge Stearns' margin order
20 of February 16th, which is attached as an exhibit to our
21 memorandum.
22         That e-mail -- that order was entered at 4:35 p.m. on
23 the 16th.  Moving backwards in time, the day before that order
24 we had had a 7.1 conference with opposing counsel, and we
25 informed opposing counsel that we would be going into court by

1   noon of that day if they did not agree to what we were seeking
2   in the order.  So they were on notice that we were going into
3   court that day.  We didn't get in by noon, we got in a little
4   after 2:00.  We filed everything under seal.  It was brought to
5   Judge Stearns eventually who ordered the TRO as of 4:35 p.m.
6          I reviewed defendants' opposition, and the best way
7   for me to explain why this is in order is to see what happened
8   versus what should have happened in that instance, your Honor.
9   What happened or what is alleged to have happened is that on
03:15 10   the way back after receiving that order, defense counsel called
11   a partner of his in his office, and that partner then told the
12   client apparently that the order had been entered.  I'm not
13   sure what exactly counsel told the client at that point because
14   the attorney back in the office would not have yet had a copy
15   of the actual order.  That was given to us in hand.  I'm not
16   sure what they would have told the client.
17          What should have happened is that the call should have
18   been to the client immediately from court to read that order to
19   them and explain exactly what it meant.  And if to the extent
03:16 20   that opposing counsel thought that the order was ambiguous at
21   any point, then they should have sought interpretation of that,
22   and they should have taken a more conservative approach to what
23   the order meant rather than taking any risks.  And especially
24   when it was so time sensitive why we brought that TRO with the
25   decisions being made in the coming days as to those two

1  customers, even more so a conservative approach should have
2  been taken.
3  　　　　So now the client apparently knows sometime soon after
4  4:35 p.m. that some order has been entered by the court.  What
5  the client should have done at that point is alert their
6  employees, but there is no evidence that they have done so.  In
7  fact, Mr. Szymczak, his affidavit says even though the order
8  entered at 4:35, I didn't know about it until 6:30 or 7:30 that
9  night.  And to the extent he says he didn't know about it
03:17 10  because he was on an Amtrak train, that's somewhat of a red
11  herring, your Honor.  He actually sent that e-mail to the
12  customer, the e-mail which forms the basis of our contempt, he
13  sent from the train that e-mail at 6:10 p.m.  So certainly he
14  could have received an e-mail from his partners or bosses
15  saying an order has been entered at 4:35 p.m., this is what the
16  order means.  They did not do that.  This would not have been a
17  hard broadcast e-mail to send, considering there are only 19
18  employees at defendant.
19  　　　　When I had the Rule 7.1 conference in relation to this
03:17 20  motion for contempt, I spoke -- and I disagreed with my brother
21  counsel as to what the order meant, I think the language is
22  very clear.  The language as to restriction is right there next
23  to the margin order of Judge Stearns.  But my brother counsel
24  said to me, I don't see the order that way.  I see the order as
25  restricting them from transacting business with Yankee Dental.

1  That's not what the order says, your Honor.  The order says you
2  can't solicit or accept business from or call upon or otherwise
3  compete regarding that customer.  So --
4          THE COURT:  All right.  That's as to the e-mail.  What
5  else?
6          MR. WINTON:  Just one more point as the to e-mail,
7  your Honor.  The timing is somewhat of a red herring, because
8  counsel is not saying that they would have told the client
9  anything different.  Even if he had reached him at 4:35, he
10 would not have told him don't send that e-mail to the client,
11 because they don't believe that e-mail is a violation.  When
12 that e-mail, if you read the e-mail, which is attached to my
13 affidavit, is very clearly a follow-up solicitation and a
14 follow-up followed upon in order to get the business from that
15 customer.
16         As to the late production of documents, in other
17 words, the December 30th stipulated order that required
18 immediate return of documents.  Initially they gave us 50 pages
19 which we believe was obviously not all that they had.  In fact,
20 they had thousands of pages of documents, and they've given us
21 additional documents -- even though the order was December 30th
22 and said immediately -- on February 1st and February 17th.
23 Those documents should have been given to us immediately, and
24 the excuse from brother counsel and the defendants is that we
25 didn't know those existed or we couldn't find them, we needed

```
 1  information from you, plaintiffs, to help us find those
 2  documents.
 3          Your Honor, frankly that's ludicrous.  They're under
 4  court order to look for these documents and to find them if
 5  they have them.  And the evidence or the basis that they wanted
 6  from us to tell them, hey, we think you have these documents,
 7  they have all that.  We're just getting that from our review of
 8  their forensic e-mails, which they already have.  And not only
 9  that, they have more than that.  They have the actual employees
10  who put those documents in those places.  Very easy to have
11  those conversations and find out what's there.  To say you have
12  to wait for us to point it out is ludicrous.
13          THE COURT:  And third.
14          MR. WINTON:  Yes, your Honor.  And in addition, just
15  as to the -- they did not look at the entire file.  They told
16  us we don't think there are any documents here, but they never
17  looked at the entire file.  This is a court order.  You have to
18  look everywhere.  You can't look in certain rooms of your
19  house, you have to look at the entire place.
20          The third is the deletion from box.net.  The order
21  clearly restricts any deleting of any documents, not just
22  Champion documents, because, frankly, we don't want them
23  deleting evidence.
24          They don't deny allowing their employees to put
25  documents in this box.net into the, quote, trash.  You saw,
```

1  your Honor, as the exhibits for the forensic expert, what that
2  trash meant.  That exhibit shows you it actually says when it's
3  in the trash this will be permanently deleted as of March 28th.
4  And we have since then, your Honor, I mean -- well, let's just
5  go back to this.
6       Why are they putting things in the trash anyway?
7  Their claim is you can't prove we deleted it.  If they're under
8  an order not to delete anything, why are they moving things
9  into the trash?  We'll get to in a second why we believe they
10 would delete it.  But they were told not to delete documents.
11 They shouldn't be moving them even to a trash.  Move them to
12 another file if you like.  They claim we didn't know the trash
13 was emptied.  What do they think the trash was for?  Further
14 examples of them not being careful, you Honor, and the reason
15 we need to see what else they have done.
16      In terms of their argument attacking our expert by
17 saying he can't prove we deleted it, well, our expert gave you
18 the documents, he showed you what they were.  Our expert --
19 subsequent to us receiving their opposition today, our expert
20 called this box.net company and said is this deletion
21 mechanism, does it actually delete the documents?  And that's
22 exactly what they said it does.  You don't have an affidavit
23 from them as to box.net because they don't want to tell you
24 what box.net would say.
25      In addition, box.net, the default, your Honor, when

```
 1   you sign up for this service, is 30-day deletion.  You can have
 2   seven-day deletion, you can have 30-day deletion, you can have
 3   90-day deletion, or you can have no deletion at all, and the
 4   default is 30-day deletion.  That's what they have.  They
 5   admitted in their affidavits they didn't know it had a deletion
 6   mechanism.  That's not enough.  They still need to abide by the
 7   court order and be careful not to delete these things.
 8           THE COURT:  The fourth point.
 9           MR. WINTON:  The fourth point, your Honor, is Susan
03:22 10  Dos Reis' late production of documents.  She writes in her
11   affidavit of January 24th she was made aware of the court order
12   at that time, January 24th.  We're not sure what that means.
13   Did she conduct a search at that time?  There is no indication
14   that she did.  In fact, even when she finds documents and gives
15   them to us the morning of her deposition, her affidavit
16   indicates it's not even because she was searching for them.
17   She was cleaning up over the weekend, happened to find some
18   documents.  There's no evidence she ever searched for
19   documents, your Honor.  There's nothing in her affidavit with
03:23 20  that respect.
21           THE COURT:  Let me ask you this --
22           MR. WINTON:  Yes.
23           THE COURT:  -- looking at the relief that you seek
24   here, I understand the third and fourth bullet point.
25   Candidly, I don't understand what you want in the second bullet
```

1  point.  This is the sanction you want, even if I thought it was
2  warranted, "arrange and pay for a further copy to be made of
3  all its electronic media immediately."  What does that mean?
4           MR. WINTON:  Well, your Honor, this goes back to what
5  happened in the beginning of the case.  That is exactly -- that
6  was the mechanism we used early on in the case when we found
7  out that they had accessed our company's computers at Citrix.
8  We said we want to see what's on your system, and they gave
9  us -- they had our expert go out to their facility --
03:23 10         THE COURT:  They agreed to that.
11          MR. WINTON:  They agreed to that.  Now that we've
12 learned, your Honor, that they haven't been careful, that
13 they've been deleting things, putting them in the trash, that
14 they haven't abided by the temporary restraining order of Judge
15 Stearns, a federal court order, now that we've learned they're
16 not being careful as to these issues, we believe this is only,
17 just like the Citrix access, this is only the tip of the
18 iceberg of what they've done.  And the only way to determine
19 that, your Honor, is to have another forensic copy, another
03:24 20 snapshot taken today so that when we do that, we can see what
21 other things have been deleted and what other activities in
22 violation of the order have transpired.  Without that, we're
23 left at trusting the other side to give us documents that may
24 or may not exist or may or may not be deleted when they've
25 proven not to be trustworthy, your Honor.

```
 1              THE COURT:  So really what you want is a snapshot of
 2    their computers as soon as you can arrange to do it.
 3              MR. WINTON:  Exactly.  Last time we had to pay for it.
 4    This time, because it's as a result of their bad acts, we'd
 5    like them to pay for it.
 6              THE COURT:  I understand.
 7              Thank you.
 8              In order for there to be contempt there has to be a
 9    clear and undoubted disobedience of a clear, unequivocal order.
10    The plaintiffs have failed to show that the late
11    productions constitute such a clear and undoubted disobedience.
12    I am concerned about the e-mail and the moving of things from
13    box.net.  I'll hear you.
14              MR. CONNOLLY:  Your Honor, first, the e-mail.  The
15    e-mail was sent by Mr. Szymczak at 6:10 on the evening of
16    February 16.  I was in court that afternoon with Mr. Winton.  I
17    earlier in the day was out of state and had not had a chance to
18    see any papers.  I don't believe there were any served at our
19    office if any were served to our office, I wouldn't have been
20    there in any event.  I received the papers shortly before we
21    received Judge Stearns' order at 4:35.  I was only able to
22    quickly glance through the papers at that time.
23              THE COURT:  But you got his order at 4:35.
24              MR. CONNOLLY:  The order, yes, your Honor, which is a
25    margin order which says the TRO is granted and that counsel has
```

```
 1   until noon tomorrow to submit papers and at 2:00 there will be
 2   a hearing.
 3           Your Honor, I had a conversation with Mr. Winton and
 4   his partner, Mr. Montgomery, two days prior; and what was fresh
 5   in my mind from that conversation was that Champion wanted to
 6   block Nexxt Show, my client, from bidding or receiving a
 7   contract award from Yankee Dental, Yankee Dental being a show
 8   that would be produced in 2012.
 9           THE COURT:  I've read the papers.
10           MR. CONNOLLY:  All right.  And so at this point, your
11   Honor, Nexxt Show had already submitted its bid.  It was placed
12   before Yankee Dental, and I had no reason to believe at 4:35 on
13   February 16 that there was anything happening in regard to that
14   bid.  I had -- I was -- as far as my understanding was
15   concerned, if the court enjoined my client, then it would not
16   be allowed to have its bid considered and certainly not perform
17   the show the following year.  I wasn't, frankly, your Honor,
18   concerned as a first matter of importance about an e-mail that
19   might be exchanged, which in this case I didn't know of it, but
20   it was answering a question posed by Yankee Dental earlier in
21   the day.  I didn't know about the question, I didn't know about
22   the answer.
23           What I did, your Honor, after reading Judge Stearns'
24   order, was to call my partner, who is the relationship partner
25   for this client, so that he could reach the principal and
```

|      |      |
|-----:|------|
| 1 | senior management and inform them that a TRO had been entered |
| 2 | enjoining the company from bidding for or performing the Yankee |
| 3 | Dental contract. |
| 4 | Now, there's language in here, which Mr. Winton has |
| 5 | focused the Court on, having to do with soliciting or accepting |
| 6 | business, calling upon, or otherwise competing.  Your Honor, to |
| 7 | be perfectly candid with the Court, I was thinking in terms of |
| 8 | the bid that was already pending and the performance of the |
| 9 | work.  I wasn't thinking about communication. |
| 03:28 10 | What was at the fore of my mind, your Honor, was that |
| 11 | it was 5:00 or a few minutes after that by the time I got back |
| 12 | to my office, and I had to get a team together to respond to |
| 13 | papers that at that time I had not yet even fully read, let |
| 14 | alone understood.  Two of the lawyers assigned to this case are |
| 15 | mothers with young children who had to get home because their |
| 16 | nannies are leaving.  So I was in the process of a logistical |
| 17 | crisis of sorts that I was dealing with for approximately the |
| 18 | next hour.  I eventually did speak to Mr. Szymczak and other |
| 19 | employees of Nexxt Show that evening, but when I spoke to |
| 03:29 20 | Mr. Szymczak, it was sometime after 6:10.  Mr. Szymczak, who's |
| 21 | in the courtroom, your Honor, as are the other affiants from |
| 22 | Nexxt Show, Ms. Dos Reis and Ms. Ryder, Mr. Szymczak was not |
| 23 | aware of the order. |
| 24 | Now, if there's blame to be cast, it's my fault, your |
| 25 | Honor.  I didn't send him an e-mail, I didn't call him.  That's |

1  an indisputable fact.  But, frankly, your Honor, my mind was
2  that there was going to be no jeopardy of the interests of
3  Champion because I had informed my client that a TRO had been
4  entered which prevented us from bidding or getting the work
5  from Champion.
6      What Mr. Winton's argument is focused on is the words,
7  I'm guessing, "solicitation or calling upon."  Well, I
8  questioned whether the e-mail at issue amounts to solicitation
9  or calling upon because it's simply answering a question.
03:30 10     But, in any event, your Honor, Judge Stearns was
11 either going to keep in place the TRO the next day or not, and
12 there wasn't going to be any material interest compromised by
13 Champion between 5:00 on February 16 and 2:00 on February 17
14 when the hearing occurred.
15     So I was focused, your Honor, on getting affidavits
16 from the appropriate people -- first, identifying who we need
17 affidavits from --
18     THE COURT:  What about transferring things from
19 box.net to trash during the course of the temporary restraining
03:30 20 order?
21     MR. CONNOLLY:  Your Honor, I can certainly understand
22 the argument made by Mr. Winton and the Court's concern about
23 that.  Here is what I can tell the Court.  All of the employees
24 at Nexxt Show were advised of the order.  All of the employees
25 at Nexxt Show were given copies of the order, and they were

1 given the benefit of legal counsel.  The person who set up
2 box.net, Ms. Ryder, who is in the courtroom, was not aware that
3 there was a 30-day destruction -- automatic destruction
4 component to the services provided to box.net.
5           THE COURT:  But they were moving them into trash.
6 Even a person who is a computer novice, such as myself, when I
7 crumble something up here and put it in my wastebasket behind
8 the bench, I assume I am done with it.  It's going to be
9 emptied.
03:31 10           All right.  I hear you.  Anything else to be said?
11           MR. CONNOLLY:  Your Honor, I think our arguments are
12 set forth in the papers.  I don't want to belabor points that
13 are already before the Court.
14           THE COURT:  Very well.
15           I've heard enough.
16           MR. WINTON:  Thank you.
17           THE COURT:  The parties, having responded to the
18 Court's order to show cause, having briefed the matter and
19 submitted affidavits and having been fully heard, the Court
03:32 20 finds and rules as follows:  1, that Nexxt Show is in contempt
21 of the orders of this United States District Court in two
22 respects:  By the Szymczak e-mail, which was within the
23 language of soliciting and calling upon; and by the continued
24 deletion -- well, we won't call it deletion -- transfer of
25 files from box.net into trash.  If there had been any confusion

```
 1   about an order of a United States District Court, it is
 2   incumbent upon counsel and the client to return to the court
 3   for clarification, and until clarified, it is the
 4   responsibility of those who are subject to a court order to
 5   take the most conservative, immediate, and conservative
 6   choices.
 7           Now, defense counsel, your candor is much appreciated
 8   by the Court, but it's not an excuse that people had to get
 9   home to relieve their nannies.  It's not an excuse that you
10   arrogated to yourself what you thought the order was directed
11   to.  In fact, the order is clear on its face, and Nexxt is in
12   contempt of the court's order.
13           Now, the sanction will be as follows in light of what
14   the plaintiffs' request is:  1, Nexxt will by noon on Friday of
15   this week arrange and pay for a copy of all its electronic
16   media.  Now, as I use that language, I believe that means a
17   picture or record made of what's on its computers as of that
18   time; and, B, shall by noon on Friday provide plaintiffs'
19   computer forensic experts with the forensic copies.
20           2, Nexxt will by Friday noon produce to Champion all
21   documents constituting communications between any -- between
22   Nexxt and any Nexxt affiliate and Yankee Dental since the entry
23   of the emergency temporary restraining order up to and
24   including Friday at noon; and will, 2, describe in detail all
25   oral communications not evidenced by such documents.
```

```
 1            There will be no sanction of attorney's fees yet.
 2   We'll see what the response to the Court's order is by Friday
 3   noon.
 4            An affidavit is to be filed with this Court by Friday
 5   noon setting forth the compliance with the Court's order.  The
 6   Court will take under advisement whether any attorney's fees
 7   are appropriate or whether this sanction is adequate.
 8            That's the order of the Court.
 9            Now, let me ask defense counsel, because very serious
10   here, do you have any questions about that order?
11            (Discussion off the record.)
12            MR. CONNOLLY:  I don't believe so, your Honor.
13            THE COURT:  Thank you.  That's the order.  We'll
14   recess.
15            (Court adjourned at 3:36 p.m.)
16                     - - - - - - - - - - - -
17                           CERTIFICATION
18       I certify that the foregoing is a correct transcript
19   of the record of proceedings in the above-entitled matter to
20   the best of my skill and ability.
21
22
23
24   /s/Debra M. Joyce                    March 9, 2011
     Debra M. Joyce, RMR, CRR            Date
25   Official Court Reporter
```