UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CHAMPION EXPOSITION SERVICES LLC;
WCP EXPOSITION SERVICES OPERATING
COMPANY LLC; and
WCP EXPOSITION SERVICES HOLDING
COMPANY LLC,

    Plaintiffs,

v.

NEXXT SHOW, LLC; MARK EPSTEIN;
MATTHEW EPSTEIN; JOHN SZYMCZAK;
SUSAN DOS REIS; SHERI RYDER; ANITA
BOTA; MICHAEL HALL; VICKY BASSETT;
and NICOLE PREFONTAINE,

    Defendants.

Civil Action No. 10-CV-12228-WGY

## DECLARATION OF SEAN M. TUTTLE IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL MOTION FOR SANCTIONS AGAINST NEXXT SHOW, LLC AND JOHN SZYMCZAK

I, Sean M. Tuttle, do depose and state as follows:

1. I am over 18 years of age and a resident of Massachusetts.

2. I am a Managing Director in the Forensic Technology Practice at StoneTurn Group, LLP ("StoneTurn"), an independent dispute consulting firm which provides, among other things, forensic technology services to attorneys, corporations, and individuals. Prior to joining StoneTurn, I spent approximately seven years working at Deloitte LLP, ending my tenure there as a manager of the Boston office's Analytic and Forensic Technology Practice. For the past eight years, I have directed and provided expertise in numerous investigations into all aspects of computer forensics and electronic discovery.

3. Champion Exposition Services LLC ("Champion"), represented by Jackson Lewis ("Counsel"), engaged StoneTurn to perform various computer-forensic analyses in the above-captioned case. StoneTurn first created forensic images of certain Nexxt Show, LLC ("Nexxt") computers on January 3, 2011 (the "Initial Images"). Among the Initial Images taken was a computer that I understand from Nexxt's outside IT consulting firm, the Amaral Group ("Amaral"), was John Szymczak's computer (the "Szymczak Computer").

4. On March 11, 2011, StoneTurn received a second set of copies of certain electronic media, identified by Amaral, as belonging to defendants in this case and to other individuals affiliated with defendant Nexxt (the "Second Images"). StoneTurn analyzed these copies, at Counsel's direction, in an effort to assist Counsel in its assessment of whether and how defendants may have accessed, utilized or deleted files which I understand from Counsel may be in violation of certain Court orders.

5. Based on StoneTurn's review and forensic analysis of the Initial Images and Second Images, there is evidence that:

    a. Electronic files were accessed and potentially moved or deleted;

    b. Other electronic media which has not been provided to StoneTurn was attached to the computers; and

    c. Electronic files have been placed in the "deleted items" folders.

6. The evidence related to these observations is provided below.

**a. Electronic files were accessed and potentially moved or deleted.**

7. In our analysis, StoneTurn was able to determine the file-names and file-paths of the last 50 documents opened using either the Microsoft Word, Microsoft Excel, or Microsoft

PowerPoint software application[1] from the Second Images of Anita Bota, Susan Dos Reis, Matt Epstein, Mark Epstein, Sheri Ryder, and John Szymczak. StoneTurn subsequently attempted to provide copies of each of these documents to Counsel. For example, StoneTurn confirmed that a Microsoft Excel spreadsheet titled "Audiology pricing from 2007.xls" was opened on February 25, 2011 from the location "C:\Users\matte\Desktop\Transfer\Phoenix7\Audiology pricing from 2007.xls" on Matt Epstein's Second Image. A true copy of that document is attached hereto as Exhibit 1.

8. During this process, StoneTurn discovered that many of the documents no longer resided at the locations at which they were last opened. In an attempt to determine if these files existed elsewhere, StoneTurn compared the missing file-names to all the file-names present on the file system in order to determine if the files had been moved from their original location. StoneTurn was still unable to locate many files with the same name in alternate locations. In our experience, a likely explanation for this result is that the files were deleted.

9. For example, StoneTurn confirmed that a Microsoft Excel spreadsheet titled "08 Labor Rate.xls" was opened on February 17, 2011 from the location "C:\Users\johns\Desktop\08 Labor Rate.xls" on John Szymczak's Second Image. When StoneTurn attempted to locate and forward a copy of that document to Counsel, we observed that the document no longer resided at the file-path where it was last opened or in any alternate location on the file-system. StoneTurn subsequently searched the entire Second Image of the Szymczak Computer for keywords created from content contained within the "08 Labor Rate.xls" document in an attempt to identify any other documents that contained the same information. StoneTurn was not able to identify any

---

[1] Microsoft Office 2010 (or version 14.0) uses application specific registry artifacts to track opened documents. These registry artifacts are located in the NTUSER.DAT registry hive for each user account under HKCU\Software\Microsoft\Office\14.0\<appname>\File MRU, where <appname> refers to the Office application used to open the file, e.g. Word, Excel, or PowerPoint.

document containing the same information as the previously existing "08 Labor Rate.xls" document located in the same location from the initial collection effort. Based on the analysis, it appears that the file was neither renamed or converted to another file format, and therefore, in my experience the most likely explanation is that at some point after the "08 Labor Rate.xls" spreadsheet was accessed on February 17, 2011, it was deleted from the Szymczak Computer.

### b. Other electronic media which has not been provided to StoneTurn was attached to the computers

10. Based on the review of the Second Image, the document titled "08 Labor Rate.xls" was also opened on February 23, 2011 from the path "E:\08 Labor Rate.xls" from the Szymczak Computer. "E:" refers to an external medium or device and not the local hard drive. StoneTurn was provided with 2 external USB devices from the Second Images collection. StoneTurn compared the two devices iSerial numbers[2] against all USB iSerial numbers recorded on the Szymczak Computer. StoneTurn determined that neither of the two devices were recorded as being connected to the Szymczak Computer by the Operating System. Therefore, the device mounted as drive letter "E:" could not be either of the two USB devices provided. As StoneTurn was provided with no other external media, it is likely that the file was accessed from a device or medium not yet provided to StoneTurn.

11. StoneTurn also analyzed a LNK file[3] created when the "08 Labor Rate.xls" file was accessed from the "E:\" volume and determined that the volume name[4] associated with the "E:" volume was "KINGSTON." After analyzing the remaining USB devices that were attached

---

[2] iSerial numbers can be used to uniquely identify a USB device. Their values are stored in the registry and system logs and persist after the device is removed.
[3] LNK files are shortcut files that point to other files or folders, residing on either the local drive or external storage.
[4] The volume name of the device is the name that appears next to the drive letter it is assigned to in Windows Explorer. It is often the case that volume names for USB devices are set to the name of the device manufacturer by default.

to the Syzmczak computer, a Kingston DataTraveler G3 USB Device with iSerial number "001CC0EC3447C060C5EA0659" was identified as the device that was most likely mounted at drive letter "E:" on the date that the document was accessed and could have contained the "08 Labor Rate.xls" file. StoneTurn would need to examine this device to confirm any additional information. There are 9 additional USB devices identified as being attached to the Szczymak Computer that were not provided to StoneTurn for examination. These devices, along with the Kingston DataTraveler G3 device, are listed in Exhibit 2.

12. A document titled "08 Labor Rate.xls" did appear as an attachment to an email on the image of the Szymczak Computer that was provided with the First Images. A true copy of that "08 Labor Rate.xls" spreadsheet, as it was attached to an e-mail message from John Szymczak to Anita Bota on September 29, 2010, is attached hereto as Exhibit 3. A document titled "08 Labor Rate.xls" also appeared on the image of the Szymczak Computer provided with the First Images at the file-path "C:\Users\johns\Desktop\08 Labor Rate.xls," which is the identical file-path accessed on the Szymczak Computer on February 17, 2011. A true copy of that document is attached hereto as Exhibit 4. The content of these two "08 Labor Rate.xls" spreadsheets were compared and are identical.

**c. Electronic files have been placed in the "deleted items" folders**

13. StoneTurn observed that since the collection of the Initial Images, over 5,000 items—most of these being e-mail messages— are now present in the "deleted items" folders of the various custodians' Microsoft Outlook accounts. StoneTurn also observed that since December 30, 2010, over 2,000 documents have been transferred to the respective "Recycle Bins" (deleted folders) of the various Nexxt-affiliated users. A listing of all items currently

residing in the Recycle Bins of each image from the Second Images collection is attached hereto as Exhibit 5.

Signed under the pains and penalties of perjury this 8th day of April, 2011.

_____
Sean M. Tuttle

## CERTIFICATE OF SERVICE

This hereby certifies that on this 8th day of April, 2011, this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants.

/s/ Brian M. Childs
Jackson Lewis LLP