UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CHAMPION EXPOSITION SERVICES LLC;
WCP EXPOSITION SERVICES OPERATING
COMPANY LLC, and
WCP EXPOSITION SERVICES HOLDING
COMPANY LLC,

    Plaintiffs,

v.

NEXXT SHOW, LLC; MARK EPSTEIN;
MATTHEW EPSTEIN; JOHN SZYMCZAK;
SUSAN DOS REIS; SHERI RYDER; ANITA
BOTA; MICHAEL HALL; VICKY BASSETT;
and NICOLE PREFONTAINE,

    Defendants.

Civil Action No. 10-CV-12228-WGY

## STIPULATED INJUNCTION

Based upon the agreement of the parties, plaintiffs Champion Exposition Services LLC ("Champion"), WCP Exposition Services Operating Company LLC, and WCP Exposition Services Holding Company LLC (collectively, with their successors and assigns, "Plaintiffs"), and defendants Nexxt Show, LLC ("Nexxt Show"), Mark Epstein, Matthew Epstein, John Szymczak, Susan Dos Reis, Sheri Ryder, Anita Bota, Michael Hall, Vicky Bassett, and Nicole Prefontaine (non-Nexxt Show defendants are referred to herein as "Individual Defendants," and the defendants, collectively, are referred to as "Defendants") (Plaintiffs and Defendants are, together, referred to herein as "Parties"), the Court enters the following Order:

1.     For the three-year period beginning April 21, 2011 and ending April 21, 2014 (the "Restricted Period") the Nexxt Show Affiliates (defined as Defendants, their agents, and all other entities related to Defendants or working on their behalves, and Nexxt Show LLC's shareholders, directors, officers, employees, successors, and assigns, including but not limited to Champion - Florida, LLC), will not directly or indirectly solicit or provide any services of any type to or in connection with any "Champion Event" (defined as a specific trade show,

exposition or other similar event which, when it most recently occurred (provided such event occurred within the three (3) years prior to April 21, 2011), was produced by Champion Exposition Services LLC, Champion Exposition Services of Northern California LLC, Champion Shipping Services LLC and/or CES Electrical, Inc. (collectively, "Champion"), as the general service contractor or decorator, regardless of whether Champion was appointed to produce the event by the event organizer, manager, promoter, another general service contractor, or other entity, provided however, that a "Champion Event" shall not include a trade show, exposition or other similar event if prior to April 21, 2011, Champion was advised that it would no longer be producing the event). Without limitation, this restriction prohibits Next Show Affiliates, directly or indirectly, from providing services to or for the Champion Event's organizer, producer, manager, contractors, sub-contractors or exhibitors in connection with that Champion Event. The only exceptions to this restriction shall be as follows:

    a. If Champion is terminated as the general service contractor for a particular Champion Event during the Restricted Period without any encouragement or other involvement by a Nexxt Show Affiliate and the event is awarded to a general service contractor that has no affiliation with a Next Show Affiliate, then Next Show shall be permitted to solicit and perform services for individual exhibitors in connection with that particular Champion Event.

    b. If (without violating this paragraph or paragraph 2 below) Nexxt Show is retained by an exhibitor to build or rent an exhibit that is intended for use at multiple events, some of which are not Champion Events, this restriction will not prohibit the exhibitor from using the exhibit on a Champion Event.

In the event the Nexxt Show Affiliates are asked to respond to a request for proposal or bid in connection with a Champion Event during the Restricted Period, such Next Show Affiliate or Affiliates shall decline such request due to certain contractual restrictions and obligations that are currently in effect with respect to Nexxt Show. This provision does not restrict the Individual Defendants from accepting employment with any Independent Entity (defined as an entity not owned, controlled, created by, or at the behest of, whether directly or indirectly, Nexxt Show and/or any Individual Defendant (or any combination of Individual Defendants), excluding only the right of any Individual Defendant to be employed or engaged by an Independent Entity) and does not similarly bind such Independent Entity to these restrictions; however, this provision does continue to bind the Individual Defendants themselves, in the event that they (or any one or combination of them) accept employment with an Independent Entity during the Restricted Period.

    2. During the Restricted Period the Nexxt Show Affiliates will not solicit to perform or perform any Champion Exhibit Business (defined as any specific services Champion has performed for exhibitors at any trade show, exhibition or event that is not a Champion Event, which, when the event most recently occurred (provided such event occurred within the three (3) years prior to April 21, 2011), such services were performed by Champion, provided however, that "Champion Exhibit Business" shall not include such services, if prior to April 21, 2011, Champion was advised that it would no longer be providing such services). This restriction applies only to the specific services Champion provided to the exhibitor at the particular event.

This restriction does not prevent the Nexxt Show Affiliates from performing other services at the event or other services for the exhibitor at the same event or other events, so long as such services do not violate Paragraph 1 above. Provided further, that this restriction shall not apply to the following events (or their respective successors):

   a. American Academy of Audiology (AAA)
   b. Special Libraries Association (SLA)
   c. Infectious Diseases Society of America (IDSA)
   d. Transcatheter Cardiovascular Therapeutics (TCT) & Cardiovascular Research Foundation-Fellows Course
   e. Society of Healthcare Epidemiology (SHEA)
   f. The International Society for Technology in Education (ISTE)
   g. 4G World
   h. National Pest Management Association (NPMA)
   i. National Apartment Association (NAA)

Notwithstanding anything to the contrary contained herein, (i) if the applicable exhibitor that had previously engaged Champion to provide Champion Exhibitor Business terminates Champion with respect to such services at the trade show, exposition or other similar event without any encouragement or other involvement by a Nexxt Show Affiliate, and (ii) a Nexxt Show Affiliate subsequently is awarded the trade show, exposition or other similar event in the capacity as the general contractor, and (iii) the trade show, exposition or other similar event is/was not a Champion Event, then Next Show shall be permitted to solicit and perform the services that were the subject of the termination.

   3.   During the Restricted Period the Nexxt Show Affiliates will not, directly or indirectly, solicit, hire, contract with, retain, consult with, work with (except in the instance where Nexxt Show and Champion may be acting as exhibitor appointed contractors at the same event), or communicate (regarding business matters) with any of the current (as of April 21, 2011) employees of the Champion Affiliates (defined as Plaintiffs, The Chase Marketing Group, The Chase Marketing Group LLC (d/b/a Immersa Marketing), SmartSystems LLC, Champion Exposition Services of Northern California LLC, WCP/Fern Exposition Services LLC, Champion Shipping Services LLC, Fern Transportation LLC, and CES Electrical, Inc.). Nothing herein shall limit or restrict Nexxt Show's right to hire individuals who as of April 21, 2011: (i) were engaged by a Champion Affiliate as an independent contractor, or (ii) worked for a Champion Affiliate only on a casual basis at show site through a union hiring hall while also working for other general service contractors in the same manner, even if such individual received a Form W-2 from a Champion Affiliate. This paragraph also does not prevent Nexxt Show from running advertisements or otherwise generally soliciting for employees as long as it does not specifically target Champion Affiliate Employees or otherwise violate this paragraph.

   4.   Nexxt Show Affiliates will not access any Champion Affiliate's computers under any circumstance, or access, use, and/or disclose in any way any property, confidential information, or trade secrets of any Champion Affiliate, including without limitation information contained in Champion's documents, computer programs and files, spreadsheets, and databases,

and/or any "Champion Financial Information" (defined as information stored by any of the Champion Affiliates on the Champion Corporate Accounting ("CCA") application; information contained in any Champion Affiliate's financial statements, whether audited or not; Champion Affiliates' financial activity; and Champion Affiliates' budgets and forecasts. "Champion Financial Information" shall not include any information which: (a) is or becomes generally available to the public other than as a result of a disclosure by the Defendants or by some other unauthorized disclosure; or (b) becomes available to the Defendants on a non-confidential basis from a source other than Defendants, provided that, to the best of Defendant's knowledge, such source is entitled to disclose Champion Financial Information to Defendants), and/or any other information obtained from Champion Affiliates. Defendants will take all appropriate steps to destroy or purge any confidential information or trade secrets of any Champion Affiliate in their possession, custody or control. This provision shall not apply to any information which: (a) is or becomes generally available to the public other than as a result of a disclosure by the Defendants or by some other unauthorized disclosure; or (b) becomes available to the Defendants on a non-confidential basis from a source other than Defendants, provided that, to the best of Defendant's knowledge, such source is entitled to disclose such information to Defendants.

5. Any breach of the provisions of paragraphs one (1) through four (4) above (the "Restrictive Paragraphs") will result in irreparable and continuing harm to Plaintiffs, for which money damages may not provide adequate relief. Accordingly, in the event of any actual or threatened breach of the Restrictive Paragraphs, or any one of them, Plaintiffs will be entitled to: (a) temporary, preliminary, and permanent injunctions, enjoining or restraining such breach or threatened breach, and Defendants hereby consent to the issuance thereof forthwith, without the necessity of a bond; and (b) recovery from Defendants of all reasonable sums and costs, including attorneys' fees, incurred by Plaintiffs to defend or attempt to enforce the provisions of this Agreement.

6. In the event that any Defendant breaches any portion of any of the Restrictive Paragraphs, Plaintiffs shall be entitled to promptly recover solely from the breaching Defendant(s) stipulated damages of Two Hundred Fifty Thousand Dollars ($250,000.00) per occurrence, except that Plaintiffs shall be entitled to promptly recover such stipulated damages from Nexxt Show in the event of any such breaches by any Defendant while employed by Nexxt Show. The Parties hereby stipulate to the reasonableness of this amount. The Parties further agree that this stipulated damages amount does not limit in any way any other damages or remedies Plaintiffs may seek or be entitled to in the event of any such breach or breaches.

7. In the event that any Plaintiff learns of any inadvertent violation of this Agreement by any Defendant, before seeking relief from the Court regarding any such violation, such Plaintiff shall send a written notice to Nexxt Show and/or the appropriate Individual Defendant advising of the inadvertent alleged violation and demanding that such violation be cured. Defendants will have five (5) business days from the date of receipt of such written notice to cure any such inadvertent violation. Nothing in this paragraph restricts Plaintiffs from seeking stipulated damages pursuant to paragraph 6 above, following the expiration of the cure period during which the alleged violation has not been cured.

June 2, 2011

/s/ William G. Young
United States District Court Judge