UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-cv-12228-WGY

_____
                                                              )
CHAMPION EXPOSITION SERVICES LLC;      )
WCP EXPOSITION SERVICES OPERATING     )
COMPANY LLC; and WCP EXPOSITION         )
SERVICES HOLDING COMPANY LLC,           )
                                                              )
                    Plaintiffs,                              )
                                                              )
v.                                                           )
                                                              )
NEXXT SHOW, LLC; MARK EPSTEIN;          )
MATTEW EPSTEIN, JOHN SZYMCZAK;       )
SUSAN DOS REIS; SHERI RYDER; ANITA     )
BOTA; MICHAEL HALL; VICKY BASSETT;    )
And NICOLE PREFONTAINE,                        )
                                                              )
                    Defendants.                           )
_____)

**DEFENDANTS' SUR-REPLY**
**(LEAVE TO FILE GRANTED MARCH 7, 2012)**

Defendants Nexxt Show, LLC, Mark Epstein, Matthew Esptein and John Szymczak (hereinafter referred to as "Nexxt") submit this Sur-reply to address and clarify several matters argued in Plaintiffs' Reply brief.[1]

---

[1] Plaintiffs submitted a new affidavit along with their Reply brief in an effort to show that Freeman Decorating Services, Inc. "succeeded to Champion's rights relating to the Stipulated Injunction" see Reply at n. 1. This fact alone should cause the dismissal of the present contempt motion. If Freeman succeeded to Champion's rights as Plaintiffs maintain, then the contempt motion is Freeman's to bring, not Champion's. However, ***Freeman is not a party to this action***. Moreover, the matter remains a closed case and neither Champion nor Freeman, despite the draconian relief requested here, have moved this Court to reopen the matter, much less add Freeman as a party.

1

A.  **Plaintiffs' Exceedingly Strained Argument That The Blast E-Mail Announcement Violated The Stipulated Injunction Makes No Sense**

In their Reply brief, Plaintiffs strain logic past its limit when they argue that the blast e-mail announcement sent by a third party in November 2011 to thousands of trade show industry professionals (see McClellan Aff., Exhibit 1) violated the Stipulated Injunction. Plaintiffs' claim that the announcement was a "personalized solicitation" directed to "individual e-mail accounts of potential customers" (Reply, at 3) makes no sense at all. The announcement was no more a "personalized" marketing effort than a print magazine ad that is sent to individual business addresses within the magazine's subscriber database, or a television ad transmitted into the individual homes of television owners.

It is undisputed that Nexxt did not know who would receive the e-mails. See Affidavit of Mattew Epstein, ¶ 14. Thus, it simply cannot be that the announcement was "personalized." One cannot send a truly "personalized" plea for business to anonymous recipients.

Moreover, the Stipulated Injunction does not include any listing of what individuals are associated with "Champion Events" (as Champion steadfastly refused to include any such listing when negotiating the agreement). Without a listing of the individuals or entities that Nexxt could not contact, Nexxt could never advertise its services at all without risking a violation of the Stipulated Injunction, which is likely the unfair result that Plaintiffs desire.

The interpretation of the Stipulated Injunction that Plaintiffs urge the Court to adopt is so broad as to effectively prevent Nexxt from advertising its services through any general advertising vendor at any time. Such a result was plainly not the parties' intent,

2

and Nexxt would never have accepted such a blanket advertising ban.  Indeed, if the parties had intended to bar Nexxt from announcing or advertising its business altogether, that certainly would have been set forth plainly the agreement.  Clearly, they did not.

To obtain a contempt order, Plaintiffs must show that Defendants "violated a clear and unambiguous order that left **no reasonable doubt** as to what behavior was expected and who was expected to behave in the indicated fashion." Langton v. Johnston, 928 F.2d 1206, 1220 (1st Cir. 1991) (emphasis added); quoting Project B.A.S.I.C., 947 F.2d at 17 (stating that the "party enjoined must be able to ascertain from the four corners of the order precisely what acts are forbidden").  Plaintiffs have not made, and cannot make, that proof.  Accordingly, their motion should be denied.

> **B.    Plaintiffs Incorrectly State That Defendants "Offer No Evidence" That Plaintiffs Had Been "Advised" They Would No Longer Be Producing The CCSA Event**

In their Reply, Plaintiffs baldly – and incorrectly -- assert that this Court has not been presented with any evidence that Plaintiffs were informed prior to April 21, 2011 that they would no longer be producing the CCSA event.  Reply, at 4.  The question is an important one because the CCSA trade show does not constitute a prohibited "Champion Event" under the Stipulated Injunction "*if prior to April 21, 2011, Champion was advised that it would no longer be producing the event. . . .*"  Stipulated Injunction, ¶ 1 (emphasis added).  The fact is, Defendants submitted an affidavit from the Executive Producer for CCSA who specifically states that, in its contract for the 2011 CCSA show, "Champion was advised. . . that the contract was for that specific event only and upon conclusion of that particular event (which took place before April 21, 2011), Champion

had no further rights to produce that event." Affidavit of Robert Coontz, ¶3. The inquiry should end there.

Plaintiffs claim that the expiration of their contractual right to the CCSA event prior to April 21, 2011 is "of no moment." Reply at 4. Although Plaintiffs argue the Stipulated Injunction is unambiguous, they nevertheless urge the Court to interpret the key phrase – "if prior to April 21, 2011, Champion was advised that it would no longer be producing the event" – far more narrowly than the plain meaning of those words.

It is indisputable that Champion was informed prior to April 21, 2011 that they could no longer claim that they would be producing the CCSA event. Mr. Coontz's affidavit confirms that. And Nexxt was under the quite-reasonable impression that Champion would not be producing that show in the foreseeable future because Nexxt had been doing the other shows associated with the University of Oregon (where the CSSA event is held). See Epstein Aff., ¶ 6. Indeed, it was not until Champion contacted Nexxt in late January of 2012 – nearly four months after the bidding process -- that Nexxt had any reason to believe that Champion remained interested in producing that show or allegedly believed that the CCSA show somehow remained a "Champion Event." Id., at ¶ 7. Upon hearing from Champion, rather than press its right to service this event, Nexxt immediately proposed a complete and total "cure" for the purported infraction. Id. at ¶¶ 9 – 11. Champion, hoping to use the Stipulated Injunction as a means to put Nexxt out of business, chose to reject that good faith cure in favor of pursuing the present unfounded contempt action.

Here again, to obtain a contempt order, Plaintiffs must show that Defendants "violated a clear and unambiguous order that left no reasonable doubt as to what behavior

was expected and who was expected to behave in the indicated fashion." Langton v. Johnston, 928 F.2d 1206, 1220 (1st Cir. 1991). Plaintiffs have not done that. Moreover, Plaintiffs rejected a complete cure for what was, at most, an inadvertent violation of the Stipulated Injunction. Accordingly, the motion should be denied.

### C. Plaintiffs' Reply And Supplemental Affidavit Underscore That The Liquidated Damages Sum Amounts To An Unenforceable Penalty

Plaintiffs Reply brief emphasizes that it is Defendants' burden to show that the liquidated damages provision constitutes an impermissible penalty. Reply at 6 - 8. Defendants acknowledge that burden, and have met that burden. Plaintiffs have not denied that, as stated in the affidavit of Matthew Epstein, ¶ 15, the liquidated sum of $250,000 per alleged violation was an utterly arbitrary figure "pulled from thin air and not subject to any analysis." That figure bears no relationship to any damages reasonably anticipated by the parties in the event of a breach of their agreement, and should not, therefore, be enforced if any violation is found. TAL Fin. Corp. v. CSC Consulting, Inc., 446 Mass. 422, 431, 844 N.E.2d 1085 (2006)(to ascertain whether such a clause amounts to an unenforceable penalty, Courts consider whether "the sum agreed on by the parties as liquidated damages represents a reasonable forecast of damages expected to occur in the event of a breach.")

Significantly, Plaintiffs have offered *no evidence whatsoever* in their Reply or supplemental affidavits to contest the utterly arbitrary nature of the $250,000 per violation liquidated damages figure.

Plaintiffs offer only an affidavit of their own counsel stating that Defendants bargained for the $250,000 liquidated damages sum as part of a "general effort to narrow the definition of 'Champion Event'" within the parties' settlement agreement. See

5


Affidavit of Erik J. Winton, ¶ 6.  Notably, Mr. Winton's statement actually supports <u>Defendants'</u> argument that the $250,000 was not intended to have any relationship to any anticipated damages.  If Mr. Winton is correct (and Defendants disagree with his memory of these events), the $250,000 liquidated damages figure was offered as consideration for a narrower definition of "Champion Event";  the $250,000 number was therefore clearly *not* the parties' reasonable estimate of the compensatory damages that Champion might suffer in the event of a breach.  The truth is that figure was payment for a negotiated concession and was picked arbitrarily because Nexxt had no reason to fear that penalty knowing that it would never intentionally violate the agreement.  Thus, the amount of the liquidated damages figure really didn't matter.

The notion that Nexxt should somehow be "estopped" from arguing that the $250,000 liquidated sum amounts to an unenforceable penalty, as Plaintiffs' argue in their Reply, once again belies Plaintiffs' true, competitive (rather than justified) reason for bringing the instant motion.  Rather than show the Court evidence that the liquidated sum was reasonable when conceived, or demonstrate any harm whatsoever, Plaintiffs argue that Nexxt shouldn't even be permitted to *argue* that the liquidated damages clause is contrary to public policy and unenforceable.

The $250,000 figure included in the parties' settlement agreement was not a figure analyzed or investigated by the Court.  The parties never litigated whether the $250,000 was a reasonable approximation of the anticipated damages for a breach.  Accordingly, the "estoppel" argument has no place here.

In making their estoppel argument, Plaintiffs seek to avoid the central issue, namely that liquidated damages must be a fair and reasonable estimate to compensate for


loss rather than punish for breach. "[A]n exaction of punishment for a breach which could produce no possible damage has long been deemed oppressive and unjust." <u>Priebe & Sons, Inc. v. United States</u>, 332 U.S. 407, 413 (1947).

It would be unfair and violate public policy to enforce such a liquidated penalty where Plaintiffs offer no evidence whatsoever that the figure was the product of any damages analysis by either party. And it would be unfair and violate public policy to award that sum or any sum to Plaintiffs where they have not sustained any actual harm and are transparently attempting to use this Court to eliminate a relatively small new competitor.

### Conclusion

For each of the above reasons, and for the reasons set forth in Nexxt's original opposition and accompanying affidavits, Plaintiffs' contempt motion should be denied.

                                                                NEXXT SHOW, LLC, MARK EPSTEIN, MATTHEW EPSTEIN and JOHN SZYMCZAK

                                                                 By their Attorneys,

                                                            **/s/ John Miller, Esq.**
                                                        Kurt S. Kusiak, BBO No. 559254
                                                        *ksk@sally-fitch.com*
                                                        John Miller, BBO No. 567563
                                                       *jm@sally-fitch.com*
                                                        SALLY & FITCH LLP
                                                        One Beacon Street
                                                        Boston, MA 02108
                                                        617- 542-5542

Dated: March 9, 2012

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of March, 2012, this document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing and paper or electronic copies will be delivered to those indicated as non-registered participants.

                                                /s/ John Miller, Esq.